IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 23-cv-01019-CMA-SKC

KATHERINE TRUJILLO,

    Plaintiff,

v.

AMITY PLAZA, LLC,
HOUSING AUTHORITY OF THE CITY OF LITTLETON,
*d/b/a* South Metro Housing Options, and
FRANK MARTINEZ,

    Defendants.

---

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

---

This matter is before the Court on Defendants Amity Plaza, LLC and Housing Authority of the City of Littleton's Motion to Dismiss. The Motion is fully briefed, including a surreply, Statement of Interest filed by the United States, and a concomitant response. *See* (Docs. ## 16, 23, 26, 29, 38, 50.) For the following reasons, the Motion is granted in part and denied in part.

### I.    BACKGROUND

**A.    FACTUAL ALLEGATIONS**

Defendant Housing Authority of the City of Littleton, doing business as "Southern Metro Housing Options," is a public entity formed by the City of Littleton. (Doc. # 1 at ¶ 8; Doc. # 16-2 at 1.) Southern Metro Housing Options unilaterally and exclusively

controls Defendant Amity Plaza, LLC (collectively "Housing Defendants"), a Colorado LLC that owns and operates the Amity Plaza apartment building. (Doc. # 1 at ¶ 7; Doc. # 16-4 at 1–2.) Housing Defendants jointly employed Defendant Frank Martinez, 58, as an Amity Plaza maintenance worker. (Doc. # 1 at ¶¶ 9, 12–13.)

Plaintiff Katherine Trujillo, 72, began renting an Amity Plaza apartment in January 2021. *Id.* at ¶ 11. Between January 2021 and May 2021, Mr. Martinez allegedly fixated on Ms. Trujillo, using his role as a maintenance worker to pursue her. *Id.* at ¶¶ 15, 17. "[U]nder the auspices of making repairs," Mr. Martinez allegedly texted and called Ms. Trujillo frequently, sometimes masturbating while speaking with her telephonically. *Id.* at ¶¶ 17–19. According to Ms. Trujillo, Housing Defendants knew of Mr. Martinez's concerning behavior because they witnessed it. *Id.* at ¶ 21 (alleging that Housing Defendants "were aware" of Mr. Martinez's unprofessional conduct without specifying who observed that behavior or how). On May 3, 2021, after calling Ms. Trujillo eleven times, Mr. Martinez entered her apartment and raped her. *Id.* at ¶ 20.

## B.   PROCEDURAL HISTORY

On April 24, 2023, Ms. Trujillo began this lawsuit. *See generally id.* Her Complaint contains four causes of action. As to all defendants, she alleges (1) rental discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(b); (2) rental interference under the FHA, 42 U.S.C. § 3617; and (3) rental discrimination under the Colorado Fair Housing Act, Colo. Rev. Stat. §§ 24-34-502, 24-34-505.6. (Doc. # 1 at ¶¶ 22–35.) Specific to Mr. Martinez, Ms. Trujillo brings a fourth claim—sexual assault. *Id.* at ¶¶ 36-38.

On June 19, 2023, Housing Defendants filed a Motion to Dismiss, which seeks dismissal of Ms. Trujillo's first three claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* (Doc. # 16.) On November 15, 2023, the United States Department of Justice filed a Statement of Interest "to assist th[is] Court in interpreting the Fair Housing Act," to which Housing Defendants responded. (Doc. # 38); (Doc. # 50); *accord* 28 U.S.C. § 517 (authorizing such statements of interest).

## II. APPLICABLE LAW

### A. RULE 12(b)(1)

Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over the claims for relief asserted in the complaint. "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). Generally, a Rule 12(b)(1) motion attacks a complaint either facially or factually. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). A facial attack challenges the court's jurisdiction using only the factual allegations of the complaint. *Id*. at 1002. By contrast, a factual attack "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id*. at 1003. Unlike a facial attack, a factual attack permits the court to consider affidavits and other documents not contained within the complaint. *Id.*

### B. RULE 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) occurs if the complaint contains impermissibly implausible factual allegations or when the claims lack a cognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *e.g.*, *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

The court's role in a Rule 12(b)(6) motion "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (internal quotation omitted). To avoid impermissibly weighing evidence, courts take all well-pleaded allegations—*i.e.*, plausible allegations—in the plaintiff's complaint as true and construe the allegations in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

### III. ANALYSIS

Housing Defendants' Motion raises three arguments. Two of them challenge both Ms. Trujillo's FHA claims, and the third attacks her claim under the Colorado Fair Housing Act.

**A.  THE COLORADO GOVERNMENTAL IMMUNITY ACT**

Housing Defendants first attack Ms. Trujillo's claims by arguing that the Colorado Governmental Immunity Act (CGIA) divests this Court of subject matter jurisdiction over all but the sexual assault claim against Mr. Martinez. (Doc. # 16 at 5–11); *accord* Colo. Rev. Stat. §§ 24-10-101, *et seq.* Housing Defendants reason that because they are the instrumentalities of public entities, and because Ms. Trujillo's claims sound in tort, the CGIA bars suit through the Eleventh Amendment. *See id.* Even if the Eleventh Amendment does not apply, they continue, the CGIA at least bars Ms. Trujillo's Colorado Fair Housing Act claim because it sounds in tort. (Doc. # 26 at 2–5.)

Ms. Trujillo and the United States challenge the CGIA's applicability. They insist that federal statutory claims flatly trump the CGIA by virtue of the Supremacy Clause. (Doc. # 23 at 4–6; Doc. # 38 at 9–12.) Separately, Ms. Trujillo disputes the CGIA's applicability to her state law claim by citing Colorado Supreme Court precedent that characterized statutory discrimination claims as mutually exclusive from tort law. (Doc. # 23 at 6–7; Doc. # 29 at 2–3.)

1. <u>Legal Standards</u>

Colorado waived portions of its sovereign immunity in the CGIA. Colo. Rev. Stat. § 24-10-106 (2022) (barring a civil damages claim against any "public entity" for "injury which lie[s] in tort or could lie in tort" regardless of whether the claim brought is technically a tort). Deciding whether a claim lies or could lie in tort requires assessing the nature of the injury and the relief sought. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003 (Colo. 2008). The nature of the injury lies in tort when the injury arises from conduct that is "tortious in nature" or from "the breach of a duty recognized in tort

5

law" where "the relief seeks to compensate . . . for that injury." *Elder v. Williams, 2020 CO 88*, ¶ 22. The remedy sought, while non-dispositive, sheds light on the nature of the injury and breached duty—particularly where a statutory claim lacking common law roots was created "to address constitutionally based concerns of equality rather than compensation for personal injuries." *Id.* at ¶ 23.

However, the CGIA does not apply to claims that trigger court's federal question jurisdiction where the defendant(s) cannot invoke Eleventh Amendment immunity. *Martinez v. El Paso Cnty.*, 673 F. Supp. 1030, 1031 (D. Colo. 1987); *Federspill v. Denver Pub. Schs.*, No. 17-CV-01480, 2018 WL 6051335, at *6 (D. Colo. Sept. 12, 2018) (unreported); *see generally Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

2. Analysis

   i. Fair Housing Act Claims

At first, Housing Defendants asserted the Eleventh Amendment. *See* (Doc. # 16 at 5–11) (asserting immunity without citing the five-factor inquiry required to trigger the Eleventh Amendment); *but see Sturdevant v. Paulsen*, 218 F.3d 1160, 1166 (10th Cir. 2000) ("the inquiry . . . is whether [the entity] is more like a county or city than . . . like an arm of the state" (quotation omitted)). In their Reply, Housing Defendants added the missing case law but "defer[red] to th[is] Court" as to whether the Eleventh Amendment applies. (Doc. # 26 at 5.) The evidence before the Court shows that Housing Defendants answer directly to the City of Littleton, and none of that evidence suggests financial dependence on state funding. *See* (Docs. ## 16-1, 16-2, 16-3.) Nor have

6

Housing Defendants meaningfully argued that the five-factor inquiry cuts in their favor. Consequently, Housing Defendants have not carried their burden of showing the Eleventh Amendment's applicability. Without the Eleventh Amendment, the Supremacy Clause places Ms. Trujillo's FHA claims beyond the CGIA's reach.

    ii. *State Law Claim*

Ms. Trujillo's Colorado Fair Housing Act claim is a different matter. (Doc. # 1 at ¶¶ 32–35.) She insists that her claim does not sound in tort; instead, she analogizes it to the statutory civil rights claims raised in *Elder*. *Compare* (Doc. # 26 at 2–5), *with* (Doc. # 23 at 6–7), *and* (Doc. # 29 at 2–3). However, a civil rights statute that adds a remedy for discrimination via sexual assault does not erase sexual assault's history as a claim for which tort remedies were available. *See generally* Douglas D. Scherer, *Tort Remedies for Victims of Domestic Abuse*, 43 S.C. L. Rev. 543, 555–61 (1992) (reciting the torts that offer redress to sexual assault victims). Although Ms. Trujillo's claimed injury is technically discrimination, the discrimination occurred exclusively due to sexual assault—an injury that undoubtedly gives rise to claims that "***could*** lie in tort." Colo. Rev. Stat. § 24-10-106 (2022) (emphasis added). Her creative lawyering affects only the vehicle by which she pursues redress—it does not change the fact that her allegations of gender discrimination directly connect to a sexual assault. Thus, "the nature of the injury" remains tortious notwithstanding the form of Ms. Trujillo's Complaint which, as the Colorado Supreme Court has made clear, is not determinative. *Robinson v. Colo.*

*State Lottery Div.*, 477 P.3d 694, 1003 (Colo. 2008) (en banc); *cf. Elder*, 2020 CO at ¶ 24.[1]

Because Ms. Trujillo's Colorado Fair Housing Act claim sounds in tort—namely because her claim arises from a sexual assault—the CGIA compels its dismissal.[2]

## B. VICARIOUS LIABILITY UNDER THE FAIR HOUSING ACT

Housing Defendants next aim at Ms. Trujillo's FHA claims by challenging whether Ms. Trujillo can hold them vicariously liable for Mr. Martinez's reprehensible misconduct. (Doc. # 26 at 8–11.) Housing Defendants argue that Mr. Martinez's intentional acts cannot support vicarious liability because sexual assault is outside the scope of his employment. *Id.* They also argue that FHA jurisprudence permitting vicarious liability for acts beyond the scope of employment rests on faulty legal authority. Specifically, they

---

[1] Although Ms. Trujillo correctly notes that the Colorado Supreme Court declined to apply the CGIA to the Colorado Anti-Discrimination Act claims in *Elder v. Williams*, this Court hesitates to extrapolate that case's reasoning to the instant case. *See Elder v.* Williams, 2020 CO 88, ¶¶ 5–8. *Elder* involved quintessential age discrimination factual allegations that were only actionable as civil rights claims. Ms. Trujillo's claims could proceed as a state civil rights claim, but not to the exclusion of other causes of action that lie in tort.

[2] Were that not enough, the Court also notes *sua sponte*, as it is authorized to do, that Ms. Trujillo's state law claim fails to affirmatively plead compliance with the CGIA's notice provision. *Weise v. Colo. Springs, Colo.*, 421 F. Supp. 3d 1019, 1050 (D. Colo. 2019). When a federal court hears a plaintiff's state law claim through the exercise of supplemental jurisdiction, and those claims allege "an injury by a public entity," the CGIA's notice provision applies—apparently irrespective of whether the claim sounds in tort. *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 838–39 (10th Cir. 2003), *abrogated on other grounds by Martinez v. Estate of Bleck*, 2016 CO 58. The notice provision requires a plaintiff to file written notice within 180 days of the date on which the injury was discovered. Colo. Rev. Stat. § 24-10-109(1) (2021). CGIA notice provision compliance poses a jurisdictional bar to suit, and a plaintiff's failure to affirmatively plead compliance within the complaint invites dismissal—typically without prejudice unless compliance would be impossible. *Aspen Valley Hosp. Dist.*, 353 F.3d at 839. The Complaint says nothing about whether Ms. Trujillo provided written notice of her Colorado Fair Housing Act claim within 180 days of May 3, 2021. That omission alone separately justifies this Court's dismissal of her state law claim.

highlight changes between the Restatement (Second) and Restatement (Third) of Agency. *E.g.*, (Doc. # 50 at 6–7, 9–14 (emphasizing that binding precedent relied on a legal conclusion stated in the Second Restatement but renounced by the Third).)

1. <u>Legal Standard</u>

The Fair Housing Act incorporates traditional principles of agency liability. *Meyer v. Holley*, 537 U.S. 280, 287 (2003). Traditionally, agency law holds an employer vicariously liable for the acts of its employee when the employee's actions fall within the scope of her employment. *E.g.*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998). Thus, vicarious liability typically requires (1) establishing the principal-agent relationship and (2) showing that those actions fall within the scope of employment. *E.g.*, *Zinn v. McKune*, 143 F.3d 1353, 1357 (10th Cir. 1998).

Scope of employment, however, "does not define the only basis for employer liability under agency principles." *Ellerth*, 524 U.S. at 758. "In limited circumstances, agency principles impose liability on employers even where employees commit torts outside the scope of employment"—for example, when the employee "was aided in accomplishing the tort by the existence of the agency relation." *Id.* (quoting Restatement (Second) of Agency § 219 (1958)); *see also Metro. Fair Housing Council of Okla. v. Pelfrey*, 292 F. Supp. 3d 1250, 1253–54 (W.D. Okla. Nov. 13, 2017); *Boswell v. Gumbaytay*, No. 2:07-CV-135, 2009 WL 1515872, at *3 (M.D. Ala. June 1, 2009) (unreported); *United States v. Thong Cao*, No. 17-1310, 2019 WL 5576954, at *2 (D. Kan. Oct. 29, 2019) (unreported). This Court must follow the binding precedent that recognizes the exception. *See, e.g.*, *Harrison v. Eddy Potash, Inc.*, 158 F.3d 1371, 1377 (10th Cir.

1998); *accord Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986); *Ellerth*, 524 U.S. at 758.

Further, FHA regulations promulgated by the United States Department of Housing and Urban Development ("HUD")[3] attach vicarious liability to employers regardless of the employer's scienter. 24 C.F.R. § 100.7 (2016). Under § 100.7, a housing provider is vicariously liable for its employee's discriminatory housing practice "regardless of whether the person knew or should have known of the conduct . . . consistent with agency law." *Id.* HUD characterizes this regulation as a traditional tort and agency law liability standard meant to encourage "appropriate training for [housing providers'] staff and to ensure compliance with the [Fair Housing] Act." *See* 81 Fed. Reg. 63054, 63065 (Sept. 14, 2016).

2. Analysis

Acts taken "to fulfill sexual urges" almost always fall outside the scope of one's employment. *See, e.g.*, *Ellerth*, 524 U.S. at 756. However, Mr. Martinez's sexual harassment was "aided and abetted by the agency relationship that necessarily existed to manage the properties." *Pelfrey*, 292 F. Supp. 3d at 1253–54. Although Housing Defendants emphasize the Third Restatement of Agency and urge this Court to abandon the binding precedent reliant on the Second Restatement of Agency, the fact remains that *Ellerth* and its progeny bind this Court. *Ellerth*, 524 U.S. at 758 (embracing

---

[3] When an agency interprets a statute over which it has enforcement authority—like HUD and the FHA—and that interpretation is reasonable, federal courts ordinarily defer to the agency. *Wilson v. Muckala*, 303 F.3d 1207, 1220 (10th Cir. 2002); *accord Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984); *Meyer*, 537 U.S. at 287–88.

the aided-in-agency theory of vicarious liability). However, restatements are, at most, "a useful beginning point for a discussion of general agency principles." *Id.* at 755. The Restatement (Third) of Agency cannot displace binding precedent.[4] To the extent that Housing Defendants invite this Court to deviate from binding precedent based on changes in nonbinding secondary sources of authority, the Court declines. That choice rightfully belongs to the Tenth Circuit—not this Court.

That legal issue resolved for now, this Court next turns to Ms. Trujillo's Complaint. The Court finds that the Complaint contains the requisite factual allegations to state FHA claims. Housing Defendants do not contest the existence of the principal-agent relationship. And the Complaint alleges that Mr. Martinez used his access privileges as an Amity Plaza maintenance worker as pretext for repeatedly contacting Ms. Trujillo. (Doc. # 1 at ¶¶ 16–20.) Indeed, Mr. Martinez's position "gave him unfettered access to communicate with and personally visit" her at her apartment—the place where he ultimately attacked her. *Gumbaytay*, 2009 WL 15158723, at *5. Further, the Complaint alleges Housing Defendants' scienter. 24 C.F.R. § 100.7 (2016); (Doc. # 1 at ¶ 21

---

[4] It is unclear whether the Restatement (Third) of Agency undercuts Ms. Trujillo's claims at all. The Third Restatement explicitly extends vicarious liability in circumstances where the agent's apparent authority constitutes the tort or enables the agent to conceal the tort's commission. Restatement (Third) of Agency § 7.08 (2006). The comments to § 7.08 apply this principle to circumstances where the agent acts with apparent authority regardless of the agent's motivation or the tortious action's potential benefit to the principal—issues stressed by Housing Defendants as methods of displacing Mr. Martinez's sexual assault from the scope of his employment. *Id.* at Cmt. B ("focus[ing] on the reasonable expectations of third parties" which, although "inapposite to many instances of tort liability, . . . explain[s] a principal's vicarious liability when a third party's reasonable belief in an agent's authority to speak or deal on behalf of a principal stems from a manifestation made by the principal and **it is through** statements or **dealings that the agent acts tortiously**" (emphasis added)). Arguably, this conduct describes Mr. Martinez's plotting.

(alleging that Housing Defendants witnessed this behavior, ergo they knew of Mr. Martinez's "untoward conduct").[5] A claim for vicarious liability under the FHA requires nothing more.

## C.  § 3604(b) APPLIES TO AT LEAST SOME POST-ACQUISITION CONDUCT

Last, Housing Defendants urge this Court to limit Fair Housing Act rental discrimination claims to discrimination in the renting or purchasing of housing—not "post-acquisition" conduct, *i.e.*, discriminatory acts occurring once the plaintiff obtains housing. (Doc. # 16 at 11–14.) Ms. Trujillo and the United States vehemently disagree. (Doc # 23 at 8; Doc. # 38 at 3–9.) Both parties cite case law favorable to their dueling statutory interpretations, and the United States supplemented the record with independent textual analysis.

1. Legal Standard

§ 3604(b) of the Fair Housing Act prohibits discrimination "in the terms, conditions, or privileges" of a dwelling's sale, rental, and "provision of services or facilities in connection therewith." 42 U.S.C. § 3604(b). The Tenth Circuit recognizes sexual harassment as an actionable form of housing discrimination under the Fair Housing Act. *E.g.*, *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993) (looking to whether a "hostile" or "abusive" environment exists, which often turns on "offensive behavior unreasonably interfer[ing] with use and enjoyment of the premises"). Typically, courts in this district

---

[5] The Court notes that this allegation straddles the boundary between a well-pleaded allegation and the type of impermissibly conclusory allegation that is typically ineligible for the presumption of truth under current federal pleading standards. However, Housing Defendants do not squarely argue this point, and this Court will not make that argument on their behalf.

examine the severity of the discriminatory conduct, that conduct's frequency, and whether it was physically threatening or humiliating. *Harris*, 510 U.S. at 23. Courts in this district also oftentimes look to Title VII jurisprudence for guidance. *See, e.g.*, *Honce*, 1 F.3d at 1088.

2. <u>Analysis</u>

This Court's independent statutory interpretation analysis and review of relevant jurisprudence lead to the conclusion that § 3604(b) applies to post-acquisition discrimination claims. This interpretation harmonizes with the Supreme Court's directive to construe the FHA broadly. *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 211–12 (1972). It also prevents absurdity. To hold otherwise would allow a landlord to rent an apartment to a woman but, shortly after she moves in, sexually harass her until she vacates—without any FHA liability.

i. *Statutory Interpretation*

Beginning with statutory language, § 3604(b) references a dwelling's "rental." A rental signifies an inherently ongoing relationship given that rentals occur via leases effective for spans of time and either codified in lease contracts or existing *de facto* as tenancy at will. See *generally Richards v. Bono*, No. 5:04CV484, 2005 WL 1065141, at *3 (M.D. Fla. May 2, 2005) (unreported) ("[A] rental arrangement involves an ongoing relationship . . . over the duration of the rental"). The same reasoning applies to the statute's inclusion of "conditions" of a dwelling's rental and "provision of services or facilities in connection therewith." 42 U.S.C. § 3604(b). Although the Fair Housing Act fails to define "conditions," the term (as used prior to the FHA's enactment) would

ordinarily refer to living conditions and, given the inclusion of "rental," that construction supports the FHA's capacity to reach the living conditions of a rental during the pendency of a lease. *E.g.*, *Webster's New International Dictionary of the English Language* 556 (2d ed. 1958).[6] Other FHA provisions support a construction that contemplates some sort of ongoing relationship. *E.g.*, 42 U.S.C. § 3602(b) (defining a dwelling using the present progressive tense—as a structure "which is occupied as . . . a residence"). Nothing in this language limits itself to pre-acquisition conduct. *Ga. State Conf. of the NAACP v. LaGrange*, 940 F.3d 627, 632 (11th Cir. 2019).

This Court's construction is consistent with HUD's reading of the FHA, to which this Court must defer. *Chevron*, 467 U.S. at 842–45. HUD's regulations, promulgated under the FHA, reflect the agency's interpretation of a statute under which it has enforcement authority. That interpretation construes the FHA to reach at least some kinds of post-acquisition conduct. 24 C.F.R. § 100.400(c)(2) (prohibiting actions that interfere with an occupant's "enjoyment of a dwelling"); 24 C.F.R. § 100.65(b)(2) (prohibiting the failure to make repairs or the improper delay of repairs); 24 C.F.R. § 100.125(a) (prohibiting the improper denying of loans that fund dwelling maintenance).

Housing Defendants challenge this construction entirely through references to case law. *E.g.*, (Doc. # 50 at 4–6.) They rely heavily on the Seventh Circuit's decision in *Halprin* and an unreported District of Colorado decision, *Davis v. Salida Housing*

---

[6] This Court's interpretation should not be taken to imply that any living condition supports a FHA rental discrimination claim—only that the statutory text does not support a bright-line rule prohibiting post-acquisition claims.

*Authority*. *Id.* at 3–6; (Doc. # 16 at 11–14). However, as explained below, neither case persuades this Court to reconsider its statutory construction.

    ii. *Case Law Review*

This Court begins with *Halprin*. The *Halprin* Court concluded that § 3604(b) does not reach post-acquisition conduct and grounded that conclusion entirely in legislative history. *Halprin v. Prairie Single Family Homes of Deerborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004). Yet the FHA's legislative history is notoriously uninformative considering the tumultuous circumstances surrounding its passage. *E.g.*, *Trafficante*, 409 U.S. at 210 (labeling it "unhelpful"). Legislators introduced the Fair Housing Act via floor amendment, which meant the bill produced no committee reports—the most reliable form of legislative history. *See generally* Aric Short, *Post-Acquisition Harassment and the Scope of the Fair Housing Act*, 58 Ala. L. Rev. 203, 224 (2006) (observing that Congress hastily added the FHA to the Civil Rights Act of 1968 as the Capitol actively prepared for race riots following Dr. Martin Luther King, Jr.'s assassination); *Mills v. United States*, 713 F.2d 1249, 1252 (7th Cir. 1983) (noting that official committee reports provide the most "authoritative expression of legislative intent" that legislative history can offer). *Halprin* failed to even acknowledge the absence of official committee reports—instead citing subcommittees' reports on a precursor bill containing somewhat different language. *Halprin*, 388 F.3d at 329. Beyond that, *Halprin* divined legislative intent from the cherry-picked statements of Senator Walter F.

15

Mondale and unsupported purposivist assumptions, neither of which deserve any deference. Short, *supra*, at 231.[7]

Stripped of the flimsy legislative history, *Halprin* offers no meaningful textual analysis. The *Halprin* Court acknowledged that § 3604(b)'s language could be read to reach post-acquisition conduct yet neglected to explain further. *Halprin*, 388 F.3d at 329. Instead, *Halprin* inexplicably lumped § 3604's subdivisions (a) and (b) together when only § 3604(a) even mentions the acquisition of housing. *Id.* at 328. Yet *Halprin* offered no justification for the improper grouping. The textual analysis left more questions than answers, which strips this Court of any reason to endorse *Halprin*'s ultimate conclusion.

Housing Defendants' remaining case law similarly lacks actual legal support. They point to *Davis v. Salida Housing Authority*, which declared that § 3604(b) is "plainly limit[ed]" to pre-acquisition conduct. (Doc. # 50 at 3 (citing *Davis v. Salida Housing Auth.*, No. 16-CV-2903, 2018 WL 3659376, at *3 (D. Colo. Aug. 2, 2018) (unreported) (quotations omitted)). But this Court does not take the *Davis* Court's conclusion at face value given that the *Davis* Court lacked the benefit of adequate briefing—Ms. Davis, *pro se*, completely ignored the § 3604(b) arguments made in the motion for summary judgment filed against her. And indeed, scrutinizing the case law cited in *Davis* reveals

---

[7] Senator Mondale did not disclaim the congressional intent to reach post-acquisition conduct as *Halprin* suggests but, rather, his statement was a response to concerns that the bill would force housing sales or rentals to minorities. *Halprin*, 388 F.3d at 329; *but see* 114 Cong. Reg. 6000 (1968) (statement of Walter F. Mondale). *Halprin* cited statements that have nothing to do with the overall intent behind the FHA.

notable flaws. One reported case entirely neglected to conduct its own statutory interpretation inquiry. *AHF Cmty. Dev. LLC v. City of Dallas*, 633 F. Supp. 2d 287, 301–02 (N.D. Tex. 2009) (relying on a Fifth Circuit case, *Cox v. City of Dallas, Texas*); *but cf. Cox v. City of Dallas, Tex.*, 430 F.3d 734, 745–46 (5th Cir. 2005) (acknowledging that "§ 3604(b) may encompass a claim . . . for actual or constructive eviction" yet narrowly holding that **the enforcement of zoning laws** cannot trigger § 3604(b) due to the attenuation between said action and a service "connected" to the sale or rental of a dwelling). The only other reported case rested on wholly distinguishable facts—discriminatory acts committed by private homeowners—and, indeed, that case expressly distinguished the underlying circumstances from FHA claims involving sexual harassment. *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1149 (S.D. Fla. 2004) (distinguishing the policy considerations behind "allowing an employer to regulate the conduct of its employees and the work environment" from "whether a homeowner association or property manager should be held accountable for the conduct of private homeowners within a community"). *Davis* also relied on two unreported cases, neither of which requires serious discussion.[8]

In sum, none of the case law mentioned above affects this Court's reading of § 3604(b). Had Congress intended to limit § 3604(b) as Housing Defendants suggest,

---

[8] One unreported case involved an objectively justifiable excuse for the failure to provide certain services while the other conducted no independent legal analysis of its own. *Farrar v. Eldibany*, No. 04 C 3371, 2004 WL 2392242, at *4 (N.D. Ill. Oct. 15, 2004) (unreported) (observing that the heating issues of which the plaintiff complained were due to scheduled replacement of the entire building's boilers); *King v. Metcalf 56 Homes Ass'n*, No. 04-2192, 2004 WL 2538379, at *2 (D. Kan. Nov. 8, 2004) (unreported) (failing to conduct independent legal analysis, instead citing *Farrar*, *Cox*, *Halprin*, *Lawrence*).

they would have done so when Congress successfully amended the FHA in 1988. *See* Pub. L. No. 100-430 (1988).

## IV. **CONCLUSION**

Based on the foregoing, the Court ORDERS as follows:

- Defendants' Motion to Dismiss (Doc. # 16) is GRANTED IN PART AND DENIED IN PART.
    - It is GRANTED with respect to Count 3. Count 3 is DISMISSED WITH PREJUDICE.[9]
    - It is DENIED in all other respects.

DATED: January 31, 2024

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

---

[9] The Court notes that more than 180 days have passed since Mr. Martinez assaulted Ms. Trujillo. The futility of amendment warrants dismissal with prejudice.